J. McD. TRIMBLE, Respondent, v. WILLIAM J. WOLL-MAN, Respondent; UNION NATIONAL BANK OF KANSAS CITY, Appellant.

### Kansas City Court of Appeals, June 3, 1895.*

Appellate Practice: ABSTRACT: EQUITY CASES. In an equity action, it is the appellate court's duty to consider the entire evidence and apply the law thereto, and the hearing on the appeal may not improperly be termed a trial *de novo*. And uniformly in this state, where the appellate court is asked to review the evidence and to determine its probative force, the whole or so much thereof, as pertains to the question at issue, should be set out in the abstract.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

APPEAL DISMISSED.

STATEMENT BY GILL, J.

This is a suit in equity, based on a complication of facts, and which may be fairly well understood by reference to the pleadings, a synopsis of which we take from the brief of appellant's counsel.

The plaintiff alleged, in his petition, that he was, on the third day of July, 1891, the owner of ten shares of the capital stock of the defendant bank, of the par value of $100 each; that, on that day, Richard T. Breese stole the certificate therefor from the plaintiff, and, without his consent or knowledge, signed plain-

---

*This case was misdated and the error not discovered until too late to place it in its chronological order.

tiff's name to the blank assignment on the back
thereof, and delivered it to defendant, Wollman;
that, on the same day, the bank canceled the certifi-
cate and issued and delivered to Wollman another one
in lieu thereof, for ten shares of stock, and that Woll-
man still held the same and pretended to be the owner
thereof; that the bank refused to issue to plaintiff any
certificate in lieu of the one of which he had been
unlawfully deprived; and that Wollman had threatened
to sell the stock to some other person. The prayer was
that Wollman be enjoined from selling or disposing of
the certificate; that it be canceled, and that the bank
be ordered to issue a new one to plaintiff.

The answer of the bank admitted that, on the
fifth day of March, 1887, a certificate for ten shares of
its capital stock was issued and delivered to the plain-
tiff, but disclaimed any knowledge as to whether the
plaintiff was the owner of the shares on the third day
of July, 1891, but on information believed that fact to
be true. As to the other allegations in the petition,
the answer is virtually a general denial. The answer
further alleged that Breese was the agent and confi-
dential clerk of the plaintiff; that Wollman was, on
the day stated, and for a long time had been, a stock
broker in Kansas City; that Wollman and Breese came
to the defendant bank and produced the certificate of
stock with plaintiff's name indorsed on the back
thereof, and demanded that a new certificate should be
issued to Wollman; that both of them represented to
the officers of the defendant that Wollman had pur-
chased the stock from the plaintiff and paid him $120
per share, and, thereupon, the cashier, relying upon
those statements, believing them to be true, and believ-
ing the plaintiff's signature to the assignment to be
genuine, canceled the certificate and issued a new one
to Wollman; that the transaction was in the ordinary

course of business, and in compliance with the demands of both Wollman and Breese, and in the belief that Wollman was the genuine owner of the stock. The answer further alleged that, by reason of the dispute between the other parties to the suit, the bank did not know whether the certificate really belonged to the plaintiff Trimble, or the defendant Wollman; that it had no interest in that question, and was ready and willing to cancel the certificate, and to issue a new one to Trimble, or to any person whom the courts should adjudge to be the owner of the shares.

The reply of plaintiff denied that Breese was his confidential clerk, but alleged that he was the employee and agent of the firm of Trimble & Braley, whose duty it was to keep the books and accounts of the firm and to perform the ordinary duties of an office boy, but that he had no other authority.

Defendant Wollman filed a separate answer and cross bill, which alleged that Breese was the confidential clerk of the plaintiff; that plaintiff intrusted him with his check books, stocks, books and other securities, and gave him the right to deposit with the defendant bank, moneys belonging to him, and to draw money and obtain drafts on plaintiff's checks on his account in the bank, and generally held Breese out to the world as a trusted employee and one who had large powers on behalf of plaintiff. That on the third day of July, 1891, Breese, as plaintiff's clerk and agent, and acting for him, came to the defendant, Wollman, and offered to sell him the stock; that defendant, being a broker, was willing to purchase the shares, but refused to pay Breese for the same until the bank should issue stock to the defendant, and he agreed that he would then pay Trimble for the stock; that the defendant went with Breese to the bank, which carefully examined the indorsement on the back of the certificate, and being

familiar with the signature of Trimble—he being a depositor there—was satisfied as to its genuineness; that defendant being only slightly acquainted with Breese, asked the officers of the bank if he was reliable, and if they knew him to be a representative of the plaintiff, and received from them an affirmative answer; that the bank then issued its certificate for ten shares of its stock in the name of the defendant, and delivered the same to Breese, and defendant thereafter paid Breese $1,000 for it; that afterward, plaintiff, having learned of the transaction between Breese and the defendant Wollman, received and accepted from Breese about $800 of the identical money which defendant had paid to Breese; that afterward the bank brought a number of suits before a justice of the peace against Breese, on certain causes of action, for $700 or $800, and that Trimble was garnishee in said suits; that while Breese was in jail under the charge preferred against him by Trimble, judgment was recovered against him in the suits brought by the bank, which judgments further ordered that, out of the money in the hands of Trimble, about $700 should be paid to the bank, which was afterward collected by the bank from Trimble, although the bank when it brought the suits and procured the garnishments against Trimble, knew that the money in Trimble's hands was part of the money paid to Breese by Wollman for the ten shares of stock. The prayer was that the defendant Wollman might be decreed to be the true and lawful owner of the shares of stock, and for other and further relief.

To defendant's answer and cross bill the defendant bank filed a reply. It denied that the officers of the bank assured Wollman that Breese was reliable, or that he was a representative of Trimble; it alleged that the certificate was presented to the cashier by Wollman, and that Wollman demanded that the bank should

cancel it and issue to him a new one; and for the purpose of inducing the bank so to do, that Wollman represented to the officers that he had purchased the certificate from Trimble and was the owner thereof and that he had paid $112 per share for the stock; that Wollman, prior to coming to the bank, prompted and induced Breese to make the same representations to the bank, for the purpose of deceiving its officers and in order to procure the issue of a new certificate, and that in pursuance of Wollman's said prompting, Breese represented to the bank that the plaintiff, Trimble, had received $112 per share for the stock, when, in fact, both of said statements were false, Wollman having paid only par for the stock, when the same was then worth on the market (and Wollman knew that fact) $112 per share; that if Trimble was wrongfully deprived of said certificate of stock, it was done by the procurement and connivance of the defendant Wollman, for which the defendant bank was in no wise responsible; that if the officers of the bank had known the fact that Wollman had paid only par for the stock, they would not have canceled the certificate, nor issued a new one to Wollman, without the permission of the plaintiff, Trimble.

The reply further admitted that the bank commenced several suits by attachment against Breese, before a justice of the peace, on account of certain checks to which Breese had forged the names of Trimble and Trimble & Braley; that a guardian *ad litem* was duly appointed in each of the suits and judgment rendered thereon; that in said suits Trimble & Braley, and each of them, were summoned as garnishees; that to them, as such, general interrogatories were submitted requiring them to answer as to any money or property in their hands belonging to Breese, or as to any debts

owing by them to Breese; that to these interrogatories Trimble & Braley filed their answer stating that they had $665, which they had obtained from the officer who had arrested Breese, and that they asked in their answer that defendant Wollman might be required to interplead in the cause, and claim the money if he had any claim thereto; their answer also stated that they had informed Wollman of their possession of the funds and asked him to make claim thereto, if he had any; that the answer of the garnishees also alleged that they had a claim upon the funds for $177.84 on account of moneys wrongfully taken from them by Breese and moneys expended by them in his apprehension and arrest, which left a net balance in their hands of $487.16, to which they made no claim as against said Wollman. Their answer also stated that Wollman had been duly notified of all the facts and of the filing of their answer to the interrogatories. The reply further alleged that Wollman was ordered and directed by the justice of the peace to appear in the causes, at a day named, and make claim to the money, if he had any, but that Wollman refused to make any claim to the money, and refused to appear before the justice for that purpose; that in the actions before the justice of the peace, judgment was rendered in favor of the bank, and against Trimble & Braley on their answer for $487.16, out of which amount the costs of the causes were adjudged to be paid, and as the proceeds of such judgments, the defendant bank received the sum of $367.84. The reply further denied all knowledge as to whether the money received by Trimble & Braley was a part of the money received by Breese from Wollman; and alleged that Wollman had at all times persistently refused to make any claim whatever to the money in the hands of Trimble, or Trimble & Brady, and has abandoned all claim or right in any of those moneys. The reply

further denied all the allegations in Wollman's answer and cross bill, except such as were specifically admitted.

On these various issues a large amount of evidence (covering, if printed, perhaps more than two hundred pages) was introduced, but only a portion thereof is set out in appellant's abstract. The decree of the court was that the cancellation by the Union National Bank of the ten shares of stock owned by plaintiff and the issue by the bank of ten shares of new stock to Wollman be set aside, annulled and for naught held, and that the ten shares issued to Wollman be canceled and held for naught. It was further decreed that the bank reissue to the plaintiff said ten shares of stock and reinstate him as a shareholder, and that the plaintiff have and recover of the bank the sum of $170, the amount of the dividends which had been declared by the bank on the stock and which were unpaid.

The court further found in favor of the defendant, Wollman, as against the Union National Bank, that by reason of the fault and negligence of the defendant, the Union National Bank, Wollman had been damaged in the sum of $1,138.05. It was, therefore, decreed by the court that Wollman have and recover of the Union National Bank the said sum of $1,138.05, with interest at six per cent. per annum until paid, and that the Union National Bank pay all the costs of the suit. The last named defendant has brought the case here by appeal.

*Gage, Ladd & Small* for appellant.

*Warner, Dean, Gibson & McLeod* and *Karnes, Holmes & Krauthoff* for respondent Wollman.

In an action in equity the appellant must set out the evidence in full. *Nichols v. Nichols*, 39 Mo. App. 291, 293; *Gunby v. Rogers*, 42 Mo. App. 465;

*Irvine v. Karnes*, 58 Mo. App. 254. The presumption is that the trial court acted correctly. *Christ v. Railroad*, 36 Mo. App. 663, 665; *City of Dexter v. McCollum*, 58 Mo. App. 450; *State v. Harkins*, 100 Mo. 666.

*Frank Hagerman* for respondent Trimble.

GILL, J.—Counsel for respondent Wollman raise the question as to the sufficiency of the appellant's abstract, and it must be held that the objection is well taken. As will be seen from the foregoing statement, this is a suit in equity, of triangular interests, and involves the decision of several questions of fact and law. And, being an equity action, it is made our duty to consider the entire evidence, pass upon issues of fact, and apply the law thereto. In chancery cases, the hearing on appeal may not improperly be termed a trial *de novo*. The appellate court ought, as near as may be, to be put in the place of the judge who tried the case below. In arriving at the exact facts of a controversy such as this, all the evidence brought forward in the trial court, and used there to enlighten the judge, should be submitted to the appellate court, and for the same reason. The burden of thus presenting a full record is imposed on the appellant by rule 15 of this court. By said rule, the abstract should embrace all that "is necessary to a full understanding of all the questions presented to this court for decision." How can we fully understand and satisfactorily determine litigated questions of fact, which we are called on to decide, except we have before us all the evidence adduced at the trial? How can we say that the lower court correctly or erroneously found the facts at issue, unless we are furnished with the entire testimony? It has been uniformly held in this state,

that in all cases where the appellate court is asked to review the evidence and determine its probative force, the whole of it, or so much thereof as pertains to the questions at issue, should be set out in the abstract. *Goodson v. Railroad*, 23 Mo. App. 76; *Nichols v. Nichols*, 39 Mo. App. 291; *Dale v. Hogan*, 39 Mo. App. 648; *Gunby v. Rogers*, 42 Mo. App. 465; *Irvine v. Karnes*, 58 Mo. App. 254; *State ex rel. Allen v. Judges, St. L. C. C.*, 41 Mo. 574; *Garrett v. Coal Mining Co.*, 111 Mo. 279; *Brand v. Cannon*, 118 Mo. 595; 2 McQuillan's Plead. and Prac., sec. 2074; Finkelnburg Mo. App. Prac. 103. See also rule 14 of this court.

The abstract we have here falls far short of the foregoing requirements. Respondent's counsel have pointed out its many deficiencies. It is shown that more than one third of the one hundred and seventy pages of typewritten testimony, introduced at the trial, is omitted from the printed abstract, and much of it, too, quite material in its tendency. The testimony of different witnesses is shown to have been cut down and abbreviated from twenty-five to seventy-five per cent. in the abstract, while that of at least one witness is entirely left out; letters, too, which would seem to lend light to the controversy, are omitted.

It is hardly an answer to these objections to the sufficiency of the abstract that appellant's counsel have honestly incorporated therein all the evidence they deemed important. We might differ with counsel as to what portions of the testimony were material and important. Much of this omitted evidence seems to bear materially on the issues involved. The court below evidently thought it material, or it would not have been admitted. We have read every word of the testimony given in the abstract, and, considering the nature and character thereof, we deem it important to have *all* that was produced in the court below. This

case presents some very close questions of both law and fact.

For violation, then, of rule 15, the appeal will be dismissed. SMITH, P. J., concurs; ELLISON, J., not sitting.