P. R. VANFRANK, Trustee, Plaintiff, Appellant, v. ST.
LOUIS, CAPE GIRARDEAU & FT. SMITH RAIL-
WAY COMPANY et al., Appellants, Defendants, and
SOUTHERN MISSOURI & ARKANSAS RAIL-
ROAD COMPANY, Appellant, MISSOURI PA-
CIFIC RAILWAY COMPANY, Intervenor, Respon-
dent.

#### St. Louis Court of Appeals, May 7, 1901.

1. **Railway Company: RECEIVERSHIP: LIEN FOR TRAFFIC AC-
COUNT: INTERVENOR, RIGHTS OF, AGAINST COMMON CAR-
RIER: PREFERENCE OVER MORTGAGE.** In the case at bar, the
intervenor was to recover traffic balances due the Missouri Pacific
Railway Company, which had accrued within the year prior to the
first receivership, and therefore, inside the time fixed by the initial
order of the circuit court, and the claim is of a meritorious origin;
because a railroad can not be operated at all without doing business
with connecting carriers and becoming indebted to them occasionally
on account of balances for the carriage of freight and passengers—
such debts are necessary to keep the company going and therefore
fall within the principle on which a preference is given over a mort-
gagee.

2. ———: ———: ———: **FUND FOR UNSECURED CREDITORS.**
The fund to which unsecured creditors must have recourse for pay-
ment, in the case of a common carrier, consists of the earnings of
the common carrier; for the recorded mortgages on the property im-
port notice to everybody that it is incumbered for the benefit of the
bondholders, and general creditors are, therefore, presumed to have
extended credit on the faith of the income of the property rather than
on the property itself, as bondholders are presumed to have pur-
chased their securities relying for payment primarily on the property
and secondarily on the residue of the income after necessary ex-
penses have been defrayed.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED (*conditionally*).

## STATEMENT OF THE CASE.

The Missouri Pacific Railway Company intervened in a suit to foreclose a number of railroad mortgages executed by the St. Louis, Cape Girardeau & Ft. Smith Railway Company, formerly known at various stages of its existence as the Cape Girardeau Railway Company, and Cape Girardeau Southwestern Railway Company. · Five mortgages were foreclosed. Four of them were known as divisional mortgages, each being the first lien on a certain division of the railway. Leo Doyle was trustee in them. The fifth was known as the consolidated mortgage and covered about thirty-five miles of the road as a first lien and the other divisions as a junior lien. It was made to the Mercantile Trust Company as trustee for the purpose of taking up the bonds secured by the divisional mortgages, preserving their liens for the benefit of the holders of bonds issued under it, and using the residue of money derived from the sale of said bonds for further building. Defaults were made in the payment of interest as it accrued on the various bonds and on the fourth day of March, 1893, the railway company itself filed a petition in the Cape Girardeau Court of Common Pleas, praying for a foreclosure of the mortgages and asking for the appointment of a receiver. The Supreme Court held said common pleas court had no jurisdiction and that all proceedings before it were a nullity, in a suit brought by the holders of certain bonds for a writ of prohibition. State ex rel. Merriam v. Ross, 122 Mo. 435. Prior to that decision of the Supreme Court, but probably in antici-

pation of it, Leo Doyle, the trustee in the four divisional mortgages, filed a petition for foreclosure in the circuit court of Cape Girardeau county making the railway company and the Mercantile Trust Company defendants, and praying for the appointment of a receiver. Louis Houck was provisionally appointed on the twenty-seventh day of February, 1894, and the provisional order was made permanent after said decision of the Supreme Court, he having been previously acting as the receiver by appointment of the common pleas court in the null proceedings. The order of the appointment by the circuit court, so far as it bears on the present controversy, is as follows:

"Sixth. It is furthermore ordered, and this order of appointment is made on the further condition, that all the debts due from the railway company for wages and other operative expenses, and for the preservation of the property, and the interests of the St. Louis, Cape Girardeau & Fort Smith Railway Company, which have accrued within one year prior to March 3, 1893, shall constitute a lien on said railroad, and on all property appurtenant thereto, superior and paramount to the lien of any mortgage set out in the petition, and said railroad shall not be released and discharged from said lien until said debt and liabilities are paid, and the receiver is authorized to pay said debt out of the earnings or any other funds applicable, or if not so paid then the same shall be paid out of the proceeds of sale of the road after the payment of costs and expenses of this proceeding."

When this order was made the Mercantile Trust Company, which represented a large proportion of the entire bonded indebtedness, had not been served with process. It subsequently became a defendant, but never consented to the terms of said order, which it challenged throughout, as did Leo Doyle and the assignee of the purchaser of the railway at the foreclosure

sale.  The suit in the circuit court proceeded to a foreclosure under a final decree rendered on the seventh day of January, 1899.  The railway property was sold on the second day of May, 1899, and bought in on behalf of the bondholders in pursuance of a scheme of reorganization, and is now owned by the Southern Missouri & Arkansas Railway Company, a corporation composed of the bondholders under the Mercantile Trust Company's mortgage.  They furnished the purchase money. The final decree contained, among others, the following provisions:

"The purchaser or purchasers shall, as part consideration of the purchase, take the property upon the express condition that he or they will pay off and satisfy any and all claims now pending and undetermined in this court, filed as interventions or otherwise in this suit, which claims accrued prior to the appointment of the receiver herein, or during the receivership, and which may be allowed by the court; or if any allowance by this court be appealed from, then by any appellate court, as prior in right to the mortgages herein foreclosed.

"It is further ordered, adjudged and decreed by the court that said purchaser or purchasers, his or their successors or assigns, shall have the right to enter their appearance in this cause and come in and make defense to any claims or demands upon said property or any part thereof now in suit or that may hereafter be made the subject of suit, or use the name of any of the parties in this suit in the prosecution or defense of such claims.  Said purchaser or purchasers, their successors or assigns, shall also have the right to enter appearance in this or any other court, including the appellate courts, and contest any claims or demands pending and undetermined at the day of the confirmation of the sale made under this decree."

When the sale was confirmed, the claim of the intervenor, the Missouri Pacific Railway Company, was pending but un-

determined. It was filed the ninth day of May, 1898. The intervening petition claimed that the St. Louis, Cape Girardeau & Fort Smith Railway Company, was indebted to it on account of joint freight accounts, tickets, mileage, bills and claims, aggregating $2,410.99, of which $765.73 accrued after Louis Houck was first appointed receiver, and $1,645.26 prior thereto. These claims, in so far as they were then due, were filed in the court of common pleas on the twentieth day of April, 1893. Doyle and the Mercantile Trust Company contested them on the ground that they were not entitled to be paid out of the income arising from property of the St. Louis, Cape Girardeau & Fort Smith Railway Company, or to be declared a lien on it of superior right to the liens of the mortgages. The circuit court referred the claim to J. W. Limbaugh by the consent of the parties. The testimony introduced before the referee is not given, but the appellant's abstract states that it supported his finding of facts, which are as follows:

"Comes J. W. Limbaugh, referee herein, and for his report in this cause says:

"That having duly qualified and notified the parties hereto of the time and place of hearing, he did at the time and place in the notices specified, hear this cause on all the evidence offered by the parties, which evidence is set forth in the exhibits hereto attached, marked Exhibits 1, 2, 3, 4, 5, 6 and 7, and from the evidence so offered he finds: That at the date the defendant railway company's property was placed in the hands of the receiver herein, said railway company was indebted to intervenor in the sum of $1,589.61, on account as follows, to-wit:

On joint freight account .............$1,031.54
On joint ticket account ............... 309.78
On joint mileage account ............. 37.40

Van Frank v. Missouri Pacific Ry. Co.

On joint general account ............. 210.89

$1,589.61

"That all of said account accrued within one year prior to March 3, 1893, to-wit, from August, 1892, to March 3, 1893.

"That all of said account is past due and unpaid and that said account is for the balance due intervenor on the joint business of said intervenor and defendant railway company for the period aforesaid, and that the conduct of said joint business was necessary and proper in the carrying on the business of the said defendant railway company.

"That under the order of this court fixing the priority of claims and in equity, intervenor is entitled to judgment in the amount of his claim in the sum of $1,589.61, with interest thereon from and after May 9, 1898, and that said judgment should be made prior and superior to the claims of mortgages and bondholders, and ordered to be paid prior to the payment of the debt due by said defendant railway company on its bonded indebtedness.

"That the receiver should be ordered to pay said claim and interest out of any funds in his hands applicable to the payment of the same.

"And should said road be sold before the payment of said claim, then out of the proceeds of the sale thereof the said claim should be ordered paid in the order of priority as above set forth."

Exceptions were filed to the referee's report by Doyle and the Mercantile Trust Company, which may be summarized as follows: That the referee erred in finding that the claim of the intervenor should have priority over the liens of the mortgagees, because the order of February 27, 1894, in so far as

the same gave priority to claims prior to March 3, 1893, over the mortgages, was void as to the trustees, they not being then parties to the suit; because the referee improperly allowed interest on the intervenor's claim and for errors in the admission and exclusion of testimony. The court overruled the exceptions and rendered judgment in favor of the Missouri Pacific Railway Company for $1,684.98 and costs, and decreed that it should be paid out of the proceeds realized by the foreclosure sale of the property before any of the indebtedness to the bondholders was paid. The trustees appealed from this judgment and a bill of exceptions was duly filed. The case was brought here on a short transcript and the abstracts of the record contain none of the evidence except what we have stated in substance. The issue as to the balance which accrued during the receivership has disappeared from the controversy, we suppose because it was settled, though that is not stated.

*R. E. Rombauer* for appellant.

(1) Initial orders, establishing preferences as conditions in the appointment of a receiver, where the receiver has not acted upon them, are subject to review on final hearing even though made with the express consent of parties before the court. Railroad v. Wilson, 138 U. S. 501; Kneeland v. Loan Co., 136 U. S. 89. As against parties who are not before the court when the order was made, such initial orders have no binding force whatever, and they may challenge their validity even though the receiver has acted upon them. Loan & Trust Co. v. Railroad, 96 Fed. Rep. 636. (2) Paragraph six of the initial order is wholly unwarranted in so far as it gives preference to labor and supply claimants over the mortgage liens represented by Doyle, trustee, and the Mercantile Trust Company, and in so far as it makes such claims payable out of

the proceeds of sale, regardless of the fact whether there were any net earnings of the railway company, applicable to the claim during the period of preference or during the receivership. Kneeland v. Loan Co., 136 U. S. 89; Trust Co. v. Brick and Contracting Co., 95 Fed. Rep. 850; Coal Co. v. Railroad, 170 U. S. 365. (3) Paragraph six of the initial order was furthermore wholly unwarranted, because it extends the time limit to one year preceding March 3, 1893, and to nearly two years before the valid appointment of a receiver in this case. Wherever the Federal courts have adopted a general time limit, they have made it not exceeding six months prior to the receivership, and in many cases not exceeding ninety days. Fosdick v. Schall, 99 U. S. 235; Blair v. Railroad, 27 Fed. Rep. 471; Bound v. Railroad, 58 Fed. Rep. 473; Loan & Trust Co. v. Railroad, 96 Fed. Rep. 636. (4) The initial order, the referee's finding, and the judgment of the court, are wholly unwarranted because the claim is one which has no standing as to time as a preferential claim under the laws of the State of Missouri. Equity follows the law. R. S. 1889, secs. 6741, 6742, 6743; Laws 1895, p. 101; Hughes v. Menefee, 29 Mo. App. 203.

*Martin L. Clardy* and *J. F. Green* for intervenor, respondent.

(1) The claim of intervenor was a proper preferential claim and was properly allowed by the referee and the court. Thomas v. Car Co., 149 U. S. 95; Hale v. Frost, 99 U. S. 389; Burnham v. Bowen, 111 U. S. 776; Miltonberger v. Railroad, 106 U. S. 286; Fosdick v. Shaw, 99 U. S. 255. (2) There was no error in allowing interest from the date of filing intervenor's petition for allowance. R. S. 1889, sec. 5972; Southgate v. Railroad, 61 Mo. 89; Burner v. Bagnell,

20 Mo. App. 543; Newman v. Newman, 29 Mo. App. 656.

GOODE, J.—A question of first impression in this State is presented for decision by the facts stated, but one familiar to the Federal Courts, which devised and developed the equitable doctrine that sometimes accords a right of prior payment to the holders of unsecured demands against insolvent railway companies over the owners of mortgage bonds. The new equity blossomed in the course of the extensive litigation entertained by those courts for the foreclosure of mortgages on and the appointment of receivers of railway properties, which gradually opened a clearer view of the complex interests involved in the transportation systems of the present day. It departs widely from common-law rules concerning mortgage-liens and the privilege of mortgagees to be satisfied before creditors at large take anything from their debtor's estate; but is so just and practical and so adapted to subserve the welfare of all parties affected by or interested in railway properties, that it furnishes an excellent type of judicial law-building to meet new exigencies, according to the careful, safeguarding process of the courts. The germ was probably borrowed from the admiralty law, which has always conceded a preference over mortgages to several classes of demands, on the theory of affording first security to those who have conserved the property by their services or supplies, for the benefit of both owner and incumbrancer—the same theory which underlies the liens accorded by the written law to laborers and materialmen. It was seen, that notwithstanding the strict letter of the law of mortgages gives railroad bondholders priority over all general creditors, there are certain forms of indebtedness which they, as well as the company, must understand will have to be discharged out of the earnings of the road before anything else is paid, in order for the company to continue active and perform its duty

to the public as a common carrier. It is only reasonable then to hold that mortgage-creditors contract with reference to that course being pursued and tacitly consent that it may be. No hardship to them is entailed thereby if the rule is cautiously administered. Experience has shown that debts are necessarily incurred in the operation of a railroad; for it is practically impossible to settle for all the labor and material required by so large a business when they are obtained; and a system of credit for a longer or shorter period generally prevails. To strengthen this credit by a prudent judicial policy, redounds to the advantage of the bondholders, because their interest can not be paid unless the line is operated, assists the companies to meet their obligations to their patrons for efficient transportation, thereby helping trade, too, and steadying the value of railway stocks. The principle of allowing expenses incurred in conserving or managing the properties of these great carriers, in preference to mortgage bonds, in appropriate circumstances, appears to be recommended by both justice and utility.

A receivership is largely a matter of grace instead of right. This precept was seized by the Federal courts as a coigne of vantage, on which they raise the rule in question, by imposing the preferential payment of previous operating expenses as a condition on which a receiver would be appointed. The rule is too recent to be free from a diversity of views as to its proper limits and as to what demands ought to be favored and what rejected. It would be presumptuous for us to go into those questions further than is necessary to correctly decide the case before us. They are fully discussed in many Federal and State opinions, which may be consulted. Fosdick v. Schall, 99 U. S. 235; Hale v. Frost, 99 U. S. 389; Miltenberger v. Logansport Ry. Co., 106 U. S. 286; Burnham v. Bowen, 111 U. S. 776; Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434; Kneeland v. American Loan Co., 136 U. S. 89; Louis-

ville Ry. Co. v. Wilson, 138 U. S. 501; Thomas v. Western
Car Co., 149 U. S. 95; Virginia & Alabama Coal Co. v. Cen-
tral Railroad & Banking Co., 170 U. S. 355; Blair v. Rail-
way Co., 22 Fed. Rep. 471; Central Trust Co. v. Texas &
St. Louis Ry. Co., 27 Fed. Rep. 178; Central Trust Co. v.
Wabash, etc., Railway Co., 30 Fed. Rep. 332; Central Trust
Co. v. St. Louis, A. & F. Ry. Co., 41 Fed. Rep. 551; Farmers'
Loan & Trust Co. v. Railway Co., 53 Fed. Rep. 182; Bound
v. Railway Co., 58 Fed. Rep. 473; New England Ry. Co.
v. Carnegie Steel Co., 75 Fed. Rep. 54; International Trust
Co. v. Townsend Brick & Contracting Co., 95 Fed. Rep. 850;
Farmers' Loan & Trust Co. v. Centralia Ry. Co., 96 Fed. Rep.
636; Penn. Mutual Life Ins. Co. v. Heiss, 141 Ill. 35; Doug-
lass v. Cline, 12 Bush. 608; Poland v. Railway Co., 52 Vt.
144; Skiddy v. Railway Co., 3 Hughes C. C. 320; William-
son's Adm'r v. Railway Co., 33 Gratt. 624.

The present intervention was to recover traffic balances
which had accrued within the year prior to the first receiver-
ship, and, therefore, inside the time fixed by the initial order
of the lower court. The claim is of meritorious origin; be-
cause a railroad can not be operated at all without doing busi-
ness with connecting carriers and becoming indebted to them
occasionally on account of balances for the carriage of freight
and passengers. Such debts are necessary to keep the com-
pany going and, therefore, fall within the principle on which
a preference is given. Miltenberger v. Logansport Ry. Co.,
Union Trust Co. v. Illinois Midland Ry. Co., Thomas v. Wes-
tern Car Co., International Trust Co. v. Townsend Brick &
Contracting Co., supra. The contest in this suit arose over
the application of the intervenor to have the traffic account due
it paid with a part of the proceeds of the foreclosure sale. As
the bondholders were the purchasers at that sale, the sum will
come out of their pockets if allowed.

The suit was instituted by Leo Doyle, the trustee in the divisional mortgages; but we are not concerned with the question whether he would be precluded from raising objections to the payment of the accounts of the several intervenors by the order of the court appointing a receiver at his prayer on the express condition that those demands be paid (Farmers' Loan & Trust Co. v. Railway Co., supra), because the Mercantile Trust Company, which was trustee in the consolidated mortgage and represented the holders of the bonds it secured, was not before the court when that order was made and is not bound by it. Union Trust Co. v. Illinois Midland Ry. Co., Farmers' Loan & Trust Co. v. Centralia Ry. Co., supra; Hervey v. Railway Co., 28 Fed. Rep. 169. Besides, the circuit court gave the purchaser at the foreclosure sale the right to come in and defend against demands, pending and undetermined, when the sale should be confirmed, either in that or appellate courts, retaining jurisdiction of the cause, with the right to retake and resell the property, if the purchaser failed to comply with its orders in respect to debts contracted prior to and during the receivership. The status of the Mercantile Trust Company, as contestant and appellant, is, therefore, safe.

The fund to which unsecured creditors must have recourse, in the first place, for payment, consists of the earnings; for the recorded mortgages on the property import notice to everybody that it is incumbered for the benefit of the bondholders, and general creditors are, therefore, presumed to have extended credit on the faith of the income of the property rather than on the property itself, as bondholders are presumed to have purchased their securities relying for payment primarily on the property and secondarily on the residue of the income after necessary expenses have been defrayed. Fosdick v. Schall, Kneeland v. American Loan Co., International Trust Co. v. Townsend Brick & Contracting Co., supra. A wider

divergence of views exists as to when the *corpus* of the estate or its proceeds may be encroached on to satisfy floating debts than as to any other phase of the doctrine, and it is on that point that judges who regard the rule with disfavor most energetically assert their opposition.

Debts incurred prior to the receivership have been sometimes preferred to the bonds in the distribution of foreclosure proceeds. We find it stated in Thompson v. Western Car Co., that "It can not be said that in no case can indebtedness for necessary supplies, which accrued before the appointment of a receiver, be allowed a priority to the mortgage bonds," and in Miltenberger v. Logansport Railway Co., that "Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership or even the *corpus* of the property;" but farther, that "the discretion to do so should be exercised with very great care. The payment of such debts stands prima facie, on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unpaid debts for operating expenses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, to operatives in its employ whose cessation of work simultaneously is to be deprecated in the interests both of the property and of the public, *and the payment of limited amounts due to other and connecting lines of road for materials and repairs and for unpaid ticket and freight balances,* the outcome of indispensable business relations, when a stoppage of such business relations would be a probable result in case of nonpayment, the general consequence involving largely also the interest and accommodation of travel and traffic, may well

place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good will and integrity of the enterprise and entitle them to be made a first lien." That is a lucid exposition of the principle we are considering. The actual point of disagreement among judges seems to be on the question whether the *corpus* of the property or the proceeds thereof, can be invaded by general creditors whose demands fall within the class of preferred debts, when there has been no diversion of the earnings to pay interest on the bonds or for permanent betterments on the property or new equipment which inured to the bondholders' benefit; or whether such diversion must be established to give those creditors access to the *corpus?* It is settled, we think, that favored debts incurred before the receivership, but unpaid at the date the receiver is appointed, continue to enjoy priority of payment out of the surplus income while he operates the line, whether there has been a previous diversion of earnings in the interests of the mortgagees or not; that is, they have a preference even after the mortgagees have started to enforce their security and have had the property placed in legal custody in order to realize on it. It was so decided where no interest had ever been paid on the bonds but was all in arrears when the debts were contracted, and when there had been no diversion whatever of the income "to pay mortgage-interest or to put permanent improvements on the property or to increase the equipment." Burnham v. Bowen, 111 U. S. 776. That case is instructive in connection with the one we are considering. The coal, for the price of which an intervention was filed in the foreclosure suit, had been furnished sometime during the year before the receiver was appointed; the exact time was not shown. But the court thought it sufficient that it was one of the current debts for operating expenses at the date of the appointment. The opinion placed the right to priority on

the following basis: "The company had never paid its bonded interest. From the very beginning it was in default in this particular, *yet the mortgage trustees suffered it to keep possession and manage the property.* The maintenance of the road and the prosecution of its business were essential to the preservation of the security of the bondholders." Bowen was ordered paid out of the proceeds of sale, because some of the earnings during the receivership had been used to discharge debts previously contracted for right of way and stations. Although the point in judgment in that case was different from what we have here, it is doubtful if the reasoning does not support the claim of the present intervenor to be preferred, for here, too, the mortgagees allowed the road to be operated long after their interest was in default. The opinion says further: "So far as anything appears in the record, the failure of the company to pay the debt to Bowen was due alone to the fact that the expenses of running the road and preserving the security of the bondholders were greater than the receipts from the business." Fosdick v. Schall is approved therein and both decisions again approved and followed in Virginia & Alabama Coal Co. v. Central Railroad & Banking Co., 170 U. S. 355. Receiver's certificates or debentures are often authorized as a first lien against the road when it must be operated at a loss while in his custody, because its operation is indispensable to bondholders and patrons. Wallace v. Loomis, 97 U. S. 146. It is difficult to comprehend why similar inevitable expenses of operation incurred before the receivership, and which the company was bound to incur because of the public character of the property, should not have a like favorable standing. The court should pay such debts because it makes them, it is said; but it makes them, like the company, for the benefit of all concerned. The bondholders have the means at their command to stop expense by taking steps to foreclose, if their interest is

in default; if it is not, then by all the authorities, traffic balances which were left unpaid in order to pay interest must be settled, if need be, out of the proceeds of the *corpus,* before anything is allowed to go on the mortgage indebtedness.

In Miltenburger v. Logansport Ry. Co., 106 U. S. 286, 311, the very contention debated here was decided. Among the floating claims given precedence by the decree in that suit was a traffic balance of ten thousand dollars due to connecting carriers when the receiver was appointed which, it was urged on the appeal, was improperly charged against the estate by the circuit court and ordered paid out of the proceeds of the sale in advance of the first mortgage bonds. No showing was made that earnings had been diverted to pay interest or make betterments. In fact, all the interest had been in default long before the contracting of that indebtedness and so remained until foreclosure proceedings were instituted. But the Supreme Court of the United States affirmed the decree and seemingly treated the substance of the property and its income, while in the receiver's hands, as both equitably liable for such debts; a logical conclusion, we venture to observe.

The appellant contends that the later decisions have introduced a more conservative spirit in regard to allowing preferences, which, if respected, will deprive the present intervenor's claim of the recognition desired. But we find nothing to countenance that notion except remarks in the opinion in Kneeland v. American Loan Co., supra, suggestive of dissatisfaction with some applications of the accepted Federal doctrine. In that case the intervention was for the rental of certain rolling stock which had been delivered to the insolvent railway by the manufacturer, under contracts in the form of leases, but which were really contracts of purchase; payment of the purchase price was never made, there had been no diversion of surplus earnings to pay interest or make improvements; the

receivership was ordered at the instance of a judgment creditor instead of the mortgagees, who were asking nothing of the court which would justify imposing terms on them in regard to paying outstanding debts as a condition precedent to obtaining relief; but above all, the rolling stock was not ordered sold by the decree but was directed to be restored to the intervenors. It would be obviously incorrect to hold, with those circumstances in proof; that the decision overruled former precedents, which were approvingly discussed in a still later opinion concurred in by all who took part in the decision. Virginia & Alabama Coal Co. v. Central R. R. & Banking Co., supra. We think, therefore, the law as declared in Fosdick v. Schall that the *corpus* of the property may be occasionally encroached on in favor of general creditors, remains yet undisturbed by the highest authority. The United States circuit court of this circuit has taken advanced. ground in favor of preferring debts contracted for operating expenses prior to foreclosure proceedings, and, in our judgment, has maintained its position by arguments as persuasive as any we have read. Farmers' Loan & Trust Co. v. K. C., W. & N. Ry. Co., 53 Fed. Rep. 182. In that opinion we find this pertinent statement of the doctrine: "And it is an error to suppose that such debts can only be given priority where there has been a diversion of the income of the road; nor is it true that they can only be paid out of the earnings of the road, and can not be made a charge on the *corpus* of the property. A diversion of the income is not essential to give them priority, and they may be made a charge on the *corpus* of the estate if the earnings are not sufficient to pay them." The cases of Miltenberger v. Railway Co., Union Trust Co. v. Illinois Midland Ry. Co., and Thomas v. Railway Co., are then noticed; and we are put at ease as regards our conclusion as to their purport being too radical by knowing that it is more moderate than that of

the eminent jurist who found they authorized him to enunciate the law as in the passage above quoted.

The foregoing deliverances, and particularly that of the United States circuit court of this jurisdiction, render it certain that the account of the intervenor in the suit before us, is entitled to preference over the mortgage bonds, if there was a prior diversion of income for interest, equipment or improvements. Several perusals of the record have failed to detect any evidence to impeach the correctness of the referee's finding that the facts warranted making the demand paramount to the mortgages, which was confirmed by the trial court. The abstract of the record furnished by the appellant shows that no interest was ever paid on any of the railway mortgages and that "the road had no net earnings during the entire period of the receivership," but was in debt at its termination. This is insufficient to support the position of the appellant, even if we fully concede the contention that the proceeds arising from the sale of the estate are exempt from the intervenor's debt unless a previous diversion of the income of the railway has been shown. The cases relied on, in fact all cases dealing with the question, hold that a diversion, either to pay interest on bonds, for permanent improvements tending to preserve the property or for rolling stock or other increased equipment, is enough to entitle an intervenor, with a demand falling in a preferential class, to satisfaction first out of the estate, or the money realized by selling it. If all the evidence was before us, or a sufficient digest of it, and showed that no diversion for any purpose held to be adequate to let in intervening debts had been made, this reason for overruling the appellant's exception would be excluded. But there is no evidence here save what has been preserved in the scanty statements contained in the abstract of the record, which only say, nothing was disbursed for interest, without showing as much in regard to substantial betterments

or equipment.   We are asked to reverse a decree in a chancery proceeding, and can only do so if it appears there was a lack of evidence to justify it.   If it was incumbent on the intervenor to prove such a diversion had been made below, it is no less incumbent on the appellant to make it clear here that the proof was not produced.   We are informed by the report of the referee, as well as by the record, that evidence was submitted by the parties from which the referee found that the intervenor ought to succeed.   The record says the testimony offered before the referee tended to support his finding of facts. The court adopted the report.   We can not assume this was unadvisedly done.   The correctness of the decree in this regard depends on facts *in pais* which are not preserved.   All presumptions and intendments are in favor of the propriety of the judgment below, and this is especially true in equity causes. The appellant's abstract must furnish the evidence for review. Bates v. Hamilton, 144 Mo. 1-16; Trimble v. Nolan, 62 Mo. App. 541; Gunby v. Rogers, 42 Mo. App. 465; Wilds v. German Ins. Co., 65 Mo. App. 78; Wentzville Tobacco Co. v. Walker, 123 Mo. 662-670; Wordsworth v. Tanner, 94 Mo. 124; Doherty v. Noble, 138 Mo. 25; Estes v. Nell, 140 Mo. 639; Stern v. Foltz, 152 Mo. 552; Bauer v. Cabanne, 11 Mo. App. 114; Turley v. Edwards, 18 Mo. App. 676; Pembroke v. Railway Co., 32 Mo. App. 61; Brand v. Cannon, 118 Mo. 595.

It is insisted that the equitable principle we have been considering, may not be recognized by the State courts because their lien statutes prescribe or point out a policy as to what classes of debts shall enjoy a preference, and, by implication, exclude all those for which no statutory lien is given, or which are not collectible by the statutory mode.   It would be a wholly unjustifiable deduction, in our opinion, to say that because the statutes afford no·lien for traffic balances, none can

be allowed by a chancery court when the circumstances are appropriate for doing so. The two matters are totally distinct. One is an enacted law, expressive, as far as it goes, of a public policy or sentiment; the other is the creation of equity tribunals, developed by them as all their other remedies, reliefs and jurisdictions were, because the law was deficient. The existence of a statute, might be a reason for refusing this redress; but the absence of one, surely can not be, unless we reverse the fundamental maxim according to which equity takes jurisdiction. Many state courts have adopted the rule although there were lien laws on their statute books. We deem it a useful one, which can be and ought to be a part of our jurisprudence.

Objection is interposed that the debt at issue was too stale to be preferred, since the rule is to limit the preference to those which have accrued in six months before the receivership is ordered. Nothing appears in the evidence relating to this point except that it accrued within the previous year, that is, within the time limited in the initial order. We would not presume it was contracted longer before than the lawful period, if there was any definite period prescribed. But there is no six months' rule, as was expressly decided in our own Federal circuit. Farmers' Loan & Trust Co. v. K. C., W. & N. Ry. Co., supra. In Hale v. Frost, 99 U. S. 389, claims three years old were allowed, and in Burnham v. Bowen, supra, one eleven months old was allowed; while in Central Trust Co. v. Wabash St. L. & P. Ry. Co., 30 Fed. Rep. 332, the mortgages were displaced by preferential debts amounting to three million dollars, some of which were for borrowed money and had accrued "within two years." The objection is, therefore, untenable.

Interest was allowed by the referee and court from the filing of the intervening petition to the date of the decree.

This was, perhaps, not strictly permissible, as the delay during that interval was caused by the court. Thomas v. Car Co., 149 U. S. 95; New England Ry. Co. v. Carnegie Steel Co., 75 Fed. Rep. 54. The intervenor, as respondent, is entitled to interest from the date of the decree in the circuit court in his favor. New England Ry. Co. v. Carnegie Steel Co., supra.

The judgment is modified so as to allow the demand for the amount found by the referee to have been owing when the receiver was appointed, to-wit: One thousand five hundred and eighty-nine dollars and sixty-one cents, with interest thereon at the rate of six per cent per annum from the seventh day of January, eighteen hundred and ninety-nine, and costs, and with that modification is affirmed. All concur.