HENRY V. MASSEY

*v.*

CAMDEN AND TRENTON RAILWAY COMPANY.

[Argued March 20th, 1911. Decided June 19th, 1911.]

1. The preferential claims to be allowed by the receiver of an insolvent corporation are those set forth in section 83 of the Corporation act.

2. When the legislature of a state has allowed to one or more classes of creditors a preferential claim upon the assets of an insolvent corporation in the hands of a receiver a court of equity may not allow a like preference to a class to which the legislature has not allowed it.

3. The preferences resulting from the doctrine of *Fosdick* v. *Schall* (*1879*), *99 U. S. 235*, in so far as they are not allowed by the New Jersey Corporation act as revised in 1896, do not exist in this state.

On appeal from an order of the chancellor denying the petition of General Electric Company.

The Camden and Trenton Railway Company being in the hands of a receiver appointed under the statutes of this state, the appellant, the General Electric Company, presented to the receiver, within the time limited by the order of the court of chancery, a claim for $417.85, covering certain electrical apparatus and supplies delivered to the railway company within six months prior to the receiver's appointment, which items of supplies in the said account were necessary to the daily operation of the railway, and for the payment whereof the General Electric Company had relied on current earnings. The claim further set out that the General Electric Company had not in fact been paid; that the receiver had received sufficient earnings during his management of the road to pay this claim, and asked that it be adjudged to be a preferred claim in distribution. The above facts were admitted by the receiver's answer.

The claim was admitted by the receiver as an unsecured claim, but its preferential character denied, whereupon the General Electric Company appealed to the chancellor, who, after argument, sustained the receiver and denied the preference. From the order of the chancellor denying the preference this appeal is taken.

*Mr. Stephen C. Cook* and *Messrs. Read, Gill & Runk* (of the Philadelphia bar, on the brief), for the appellant.

*Mr. John D. McMullin* and *Messrs. Vroom, Dickinson & Scammell,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

The appellant seeks to support its claim to a preference under an equitable rule that was first worked out by Chief-Justice Waite in his opinion in *Fosdick* v. *Schall, 99 U. S. 235.* This case was decided in 1879, and has been since followed in the federal courts and by some state courts, not, however, with entire unanimity as to the extent of the preference given, some courts having allowed a preference to all indebtedness of a certain sort incurred within eighteen months prior to insolvency, others having limited it to ninety days, and in others, which are the majority, six months is the time fixed.

It is not necessary to our decision of the present case that the doctrine illustrated by these cases be either explicitly stated or critically examined, since, regardless of its soundness or its merits, it is not open to the courts of this state to adopt it.

The general topic with which such equitable doctrine is concerned, is the distribution of the assets of insolvent corporations in the hands of a receiver with express reference to the preferences to be allowed in such cases. In this state, that matter has been the subject of legislative consideration, but the resulting legislation affords no support for the appellant's claim. At the time *Fosdick* v. *Schall* was decided, our statutory law gave in cases of insolvent corporations a preferential lien that was un-

limited as to time or amount. *P. L. 1869 p. 1448; Rev. 1877 p. 188 § 63; Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 33 N. J. Eq.* (*6 Stew.*) *192; Wright* v. *Wynockie Iron Co., 48 N. J. Eq.* (*3 Dick.*) *29*.

In 1892, after the decision of *Fosdick* v. *Schall,* a new and independent statute was enacted upon this subject, by which a lien was given to laborers and workmen for the amount of wages due them for work and service performed within two months preceding the institution of insolvency proceedings, which claim was given a preference excepting as to mortgages on land and chattel mortgages that fulfilled certain requirements. In 1893, it was held, by Vice-Chancellor Van Fleet, that "the statute of 1892 covers the whole subject-matter embraced by the prior law, with an additional highly important provision, and was obviously designed to take its place and stand as its substitute." *Mersereau* v. *Mersereau Company, 51 N. J. Eq.* (*6 Dick.*) *382*.

The general subject-matter of these statutes was manifestly the creation of liens and priorities in those cases in which the legislature thought they should exist. In 1896, this statute, substantially unchanged in its language, was incorporated by the legislature as sections 83 and 84 of the Revised Corporation act. This course of legislation shows that the legislature of this state has considered and dealt with the subject of preferential claims against insolvent corporations, allowing them in those cases in which in its judgment it was equitable and proper that they should be allowed, and not allowing them in the class of cases in which the appellant now claims that the court of chancery should have allowed them, notwithstanding this legislative regulation of the subject. For seventeen years prior to the revision of our Corporation act in 1896 the rule for which the appellant contends had been administered in the federal courts and elsewhere throughout this country, to the presumed knowledge of the revisers of the Corporation act, who were men of exceptional breadth of legal and judicial knowledge. Under these circumstances, the provision of our present Corporation act, upon this subject, is in effect a declaration by the legislature as to the preferences that are to be allowed in the winding up of insolvent corporations of this state regardless of the rule upon that subject in

force elsewhere. Whatever its provisions may be, such a rule, whether of judicial or legislative origin, is essentially legislative in character. If it emanate from the legislature, it is the equitable judgment of a law-making body, if from a court of equity it is the legislative judgment of that tribunal. That a provisional jurisdiction of this latter character inheres in the court of chancery may, for present purposes, be assumed without inquiring into its history or even its precise nature, since, upon such assumption, the legitimate condition for its employment constitutes, at the same time, a limitation upon its exercise. This unique jurisdiction, and its inherent limitation, are nowhere so well described as by DeLolme, that astute and sympathetic critic of English institutions, who did for them, in his "Constitution of England," what fifty years later his fellow-countryman, de Tocqueville, did for ours in his "Democracy of America." "Of the courts of equity as established in England," DeLolme says, "the following definition may be given, which is that they are a kind of inferior experimental legislature, continually employed in finding out and providing new law remedies for those new species of cases for which neither the courts of law nor the legislature have as yet found it convenient or practicable to establish any; in doing which they are to *forbear to interfere with such cases as they find already in general provided for." London Ed. 1817 p. 148.*

Even those who are shocked at the notion that legislative power of any sort resides in a judicial tribunal will not hesitate to subscribe to the limitation of such power, assuming it to exist, viz., to cases not "already in general provided for." All therefore may agree that whatever jurisdiction equity may have with respect to rights that are incidental to the administration of a *quasi*-public agency, such jurisdiction is conditioned upon the absence of any general legislative regulation of the subject, and hence falls whenever the legislative will, in this respect, has been declared. This bar, it should be noted, does not depend upon the details of such legislative action, but upon the fact that the legislature has declared its will upon the general subject, affirmatively by what it has enacted, negatively by what it refrained from enacting. The opposite view, for which the appellant must perforce contend, viz., that where the statutory law has given a preferential lien to

one class and has omitted to give it to some other class, a court of equity may extend such preference to a class so omitted, as if no such legislative regulation of the general subject existed, leads in effect to the proposition that a court of equity may put into a statute all that the legislature has determined to leave out; in which case it will be observed that the very fact that the legislature has so determined logically constitutes the jurisdictional basis of such equitable interference.

In the opinion quoted by the appellant, in support of this view, viz., *Van Frank* v. *Missouri Pacific Railroad Co., 89 Mo. App. 460*, the argument is appropriately crowned with the thought that the law, to correct the deficiencies of which equity was established, includes not only law as distinguished from equity, but also contemporaneous statutory enactments, the inference sought to be drawn being that, where an act of the legislature is lacking in universality, equity may supply the deficiency.

Holding. as we do, the contrary view, our conclusion is that by force of the provisions of the Corporation act of this state the only preferential claims to be allowed in cases of insolvency are those that the legislature has declared, and that upon this ground the order of the chancellor denying a preference to the claim of the appellant should be affirmed.

*For reversal*—None.