The receiver of the defendant corporation is perplexed and he beseeches the court to extricate him from his present involvement. A platoon of ten irate creditors has encircled him, emphatically announcing that they paid specified sums of money to the defendant for the purchase of coal which was to be delivered to them at a later date. The defendant has been declared insolvent and the coal has not and cannot now be supplied. Thus circumstanced, these crediters demand that the receiver promptly reimburse them in full for the moneys respectively prepaid by them to the defendant.
Seemingly, these creditors either are asserting a claim in the distribution of the assets of the insolvent debtor preferential in character to that of the general creditors or they are insisting that the circumstances created a trust relationship.
If their claims are based upon the former supposition, then it must be conceived that — in our state, the distribution of the assets of insolvent corporations by a receiver, inclusive of preferential claims, has been the subject of legislative consideration. The only preferential claims to be allowed in cases of insolvency are those that the legislature has declared.Massey v. Camden and Trenton Railway Co., 78 N.J. Eq. 539;80 Atl. Rep. 557. Moreover, even those sections of the statute affording a preference are to be strictly construed. Colyer v.Foster Screen Co., 99 N.J. Eq. 734; 133 Atl. Rep. 542. In the absence of statutory provision, the assets of an insolvent corporation are distributed ratably among the creditors in recognition of the principle that equality is equity. *Page 60 Miller v. Savage, 62 N.J. Eq. 746; 48 Atl. Rep. 1004; TheEngineering Co. v. Perryman Electric Co., 113 N.J. Eq. 255;166 Atl. Rep. 461; affirmed, 114 N.J. Eq. 51; 168 Atl. Rep. 298; 19C.J.S. § 1548; 2 Pom. Eq. § 410.
If founded upon the latter hypothesis, it is disclosed that the sums paid by all of these claimants with the exception of one, were commingled with the general funds of the company. The moneys so paid cannot now be identified and traced into a particular account, fund or property, which, as such, passed into the hands of the receiver. When the scent fails, the pursuit must be abandoned.
It transpires that one of the claimants paid the sum of $69.30 to the defendant on May 6th, 1942, and that her check was deposited in the bank account of the defendant on May 9th, 1942, and that there were no withdrawals thereafter from the account until the appointment of the receiver. Of course, the claim for trust property which is not in truth an asset of the debtor is essentially distinct from that seeking a preferential share of the assets of the insolvent debtor. Does the mere circumstance that the money was paid in advance of the intended delivery of the merchandise create a trust or only a debt? The test to be applied is whether the person or corporation receiving the money acquired both the legal and beneficial ownership of it. This distinction is significant in respect of claims against insolvent estates, for the beneficiary of a trust is entitled to the trust fund if he can trace it into an existing fund or property of the debtor, but a mere creditor obtains no preferential or superior right to payment over other general creditors merely because he can trace the course of his money into an unconsumed fund or account of the debtor. 1 Scott on Trusts § 12:2; § 12:6.
It is not evident that any of these claimants intended that the defendant would be restricted in the use of the moneys which they paid for the future delivery of the coal. They anticipated that the coal would be furnished and they accordingly retained no beneficial interest in the sums prepaid.
Furthermore, the circumstances do not disclose any active fraud or dishonest conduct of the defendant out of which a trust exmaleficio might arise. *Page 61 
The claimants can only participate, pari passu, with other general creditors in the ultimate distribution of the assets of the defendant.
The receiver is so advised.